531 S.E.2d 301

**In the Interest of ROBERT R., a juvenile under the age of seventeen, Appellant.**

**No. 3165.**

Court of Appeals of South Carolina.

Heard March 7, 2000.
Decided May 22, 2000.
Rehearing Denied July 8, 2000.

J. Edward Bell, III, of Bell & Moore, of Sumter, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Cecil Kelly Jackson, of Sumter, for respondent.

MOREHEAD, Acting Judge:

The family court adjudicated Robert R., a juvenile, delinquent on two counts of first degree criminal sexual conduct with a minor and ordered his commitment for an indeterminate period not to exceed his twenty-first birthday. On appeal, Robert raises several issues regarding the family court's exclusion of his polygraph examination results. He also argues the State failed to prove the alleged offenses occurred during the time period referenced in the juvenile petition. We affirm in part and remand for a hearing pursuant to *State v. Council*, 335 S.C. 1, 515 S.E.2d 508, *cert. denied*, —— U.S. ——, 120 S.Ct. 588, 145 L.Ed.2d 489 (1999).

Two minor females alleged Robert committed a variety of sexual assaults upon them, forced them to perform sex acts on him, and performed sex acts in their presence. The alleged victims, who were seven and nine years old at trial, testified the assaults occurred while Robert babysat them at their great-grandmother's home and their grandmother's home. Their great-grandmother testified Robert babysat the alleged victims at her home and at their grandmother's home while they lived with her during 1997 and part of 1996.

## I. Subject Matter Jurisdiction

■ The State argues Robert served his notice of appeal late, depriving this court of subject matter jurisdiction over his appeal. We disagree.

In order to obtain appellate review of a conviction in general sessions, the convicted person must serve a notice of appeal within ten days after the sentence is imposed. Rule 203(b)(2), SCACR. A juvenile adjudicated delinquent in family court must also serve a notice of appeal within ten days after the sentence is imposed. Rule 203(b)(3), SCACR. In computing time limits under our appellate court rules, the date of the triggering event is not counted. Rule 234(a), SCACR. The last day of the period is counted, however, "unless it is a Saturday, Sunday or a state or federal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor such holiday." Rule 234(a), SCACR.

In this case, the family court imposed its sentence at a dispositional hearing on May 14, 1998. Robert served his

notice of appeal twelve days later on May 26. The tenth day after Robert's dispositional hearing, May 24, was a Sunday and the following day was Memorial Day, which is both a state and a federal holiday. *See* 5 U.S.C.A. § 6103(a) (West 1996) (Memorial Day is a federal holiday); S.C.Code Ann. § 53-5-10 (Supp.1999) (Memorial Day is a state holiday). Robert timely served his notice of appeal on May 26 because the prior two days were not used in computing his time to serve. We, therefore, conclude we have subject matter jurisdiction to review his appeal.

## II. Polygraph Evidence

█ Robert first argues the family court abused its discretion in refusing to admit evidence that he passed a polygraph test concerning the allegations against him. He specifically asserts three arguments: (1) this court should adopt the *Daubert* [1] standard for assessing the admissibility of scientific evidence, (2) the per se rule against the admission of polygraph evidence has been overruled by the South Carolina Rules of Evidence, and (3) the exclusion of the polygraph results in this case constituted prejudicial error.

We initially address the issue of whether there was a sufficient proffer in this case to review this argument on appeal. The pertinent rule of evidence states, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Rule 103(a), SCRE. In this case, Robert argued. the polygraph results should have been admitted, citing the *Daubert* case. Robert stated on the record that Joseph Gallimore, who has been conducting polygraph examinations for twenty years, intended to testify that he found Robert to be honest and truthful. Gallimore specifically would have testified that he asked Robert, "did you ever engage in any sex act with [victim] and his answer was no; did you ever engage in any sex act with [other victim] and his answer was no." We conclude Robert suffi-

---

1. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

ciently stated the basis for the admission of the evidence and sufficiently proffered evidence of the substance of Gallimore's testimony regarding Robert's polygraph examination. This issue, therefore, is preserved for our review.

In *Daubert,* the United States Supreme Court adopted a new federal standard for determining the admissibility of scientific evidence. 509 U.S. at 589 n. 6, 113 S.Ct. 2786. The decision indicated the adoption of the Federal Rules of Evidence, particularly Rule 702, necessitated the new approach. *See Daubert* 509 U.S. at 587–89, 113 S.Ct. 2786. That rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702. Although Rule 702 of the Federal Rules of Evidence is identical to Rule 702 of the South Carolina Rules of Evidence, our state supreme court recently declined to adopt the *Daubert* standard. *See Council,* 335 S.C. at 20, 515 S.E.2d at 518. The court concluded "the proper analysis for determining admissibility of scientific evidence is now under the SCRE." *Id.* at 20, 515 S.E.2d at 518. The court explained, "[w]hen admitting scientific evidence under Rule 702, SCRE, the trial judge must find the evidence will assist the trier of fact, the expert witness is qualified, and the underlying science is reliable." *Id.* In determining reliability, the trial court should consider several factors, including:

> (1) the publications and peer review of the technique; (2) prior application of the method to the type of evidence involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures.

*Id.* at 19, 515 S.E.2d at 517 (citing *State v. Ford,* 301 S.C. 485, 392 S.E.2d 781 (1990)).[2] Additionally, evidence admissible under Rule 702 should be evaluated under Rule 403, SCRE, to

---

2. The court in *Council* refers to these considerations as the *Jones* factors after *State v. Jones,* 273 S.C. 723, 259 S.E.2d 120 (1979), which established this state's former standard for the admissibility of scientific evidence.

"determine if its probative value is outweighed by its prejudicial effect." *Id.* at 20, 515 S.E.2d at 518. "Once the evidence is admitted under these standards, the jury may give it such weight as it deems appropriate." *Id.* at 20–21, 515 S.E.2d at 518.[3]

In addition to announcing the current standard for the admissibility of scientific evidence, the court in *Council* also considered whether the trial court's refusal to admit polygraph evidence constituted an abuse of discretion. 335 S.C. at 21, 515 S.E.2d at 518. During the penalty phase of his trial for numerous charges, including murder, Council attempted to admit evidence that another person's polygraph examination concerning the victim's death indicated deception. The trial court, relying on case law holding polygraph evidence inadmissible as unreliable and finding that the science of polygraph had not improved, refused to admit the evidence. On review, the supreme court stated, "[t]his Court has consistently held the results of polygraph examinations are generally not admissible because the reliability of the tests is questionable." *Id.* at 23, 515 S.E.2d at 519. The court also acknowledged the United States Supreme Court's recent holding, citing the absence of a consensus on the reliability of polygraph evidence, "that a per se rule against the admission of polygraph evidence does not violate a defendant's right to present relevant evidence in his defense as guaranteed by the U.S. Constitution." *Id.* at 24, 515 S.E.2d at 520 (citing *United States v. Scheffer,* 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)). Despite the general prohibition on the admission of polygraph results, the court stated, "in light of the adoption of the SCRE, admissibility of this type of scientific evidence should be analyzed under Rules 702 and 403, SCRE and the *Jones* factors." *Id.*

Before the decision in *Council,* our supreme court repeatedly held polygraph examination results are generally inadmissible. *See State v. Johnson,* 334 S.C. 78, 512 S.E.2d 795 (1999);

---

**3.** Although our supreme court in *Council* declined to adopt the *Daubert* standard, instead selecting an approach based on both the South Carolina Rules of Evidence and prior South Carolina case law, at least one observer has noted that the two standards are "very similar." *See* G. Ross Anderson, Jr., *Evidence Eggshells—A New Walk for Experts,* The Bulletin, Fall 1999, at 7, 9.

*State v. Wright,* 322 S.C. 253, 471 S.E.2d 700 (1996); *State v. Pressley,* 290 S.C. 251, 349 S.E.2d 403 (1986). This rule grew from questions concerning the reliability of polygraph tests. *See Wright,* 322 S.C. at 255, 471 S.E.2d at 701 ("Generally, the results of polygraph examinations are inadmissible because the reliability of the polygraph is questionable."). Even though the SCRE became effective September 3, 1995, the per se rule against the admission of polygraph results appeared to remain intact until the decision in *Council. See* Rule 1103(b), SCRE (SCRE became effective September 3, 1995); *Johnson,* 334 S.C. at 90, 512 S.E.2d at 801 (citing the general inadmissibility rule).

■ Relying on case law which expresses the per se rule excluding polygraph results, it is understandable why the family court refused to admit the evidence. However, because the family court applied the per se rule rather than having analyzed the admissibility under the SCRE and the *Jones* factors, we do not have enough information to determine whether the evidence was properly excluded. We, therefore, remand to the family court for a hearing under *Council* to determine whether Robert's polygraph results should have been admitted. If the family court, in its discretion, decides the evidence is admissible under the standard explained in *Council,* it should order a new trial.

### III. Dates of the Alleged Offenses

■ Robert next argues the State failed to prove beyond a reasonable doubt that the alleged offenses occurred between August 1996 and September 1997, as alleged in the juvenile petition. He points to the alleged victims' difficulty in pinpointing the dates of the charged offenses and to testimony of other witnesses that he had no contact with the alleged victims during the relevant time. We find no error.

Robert cites the following passage from *State v. Pierce,* 263 S.C. 23, 207 S.E.2d 414 (1974), for the proposition that the State is required to prove beyond a reasonable doubt that the alleged offense occurred within the time span referenced in the juvenile petition:

While it is true that the State need not prove the exact date set forth in the indictment unless time is an essential element of the offense or is made a party [sic] of the description of it, the State should not be allowed to prove a different date than that set forth in the indictment, where defendant relies upon the defense of alibi, unless the defendant is held to have had knowledge that the State would attempt to prove a different date upon trial.

263 S.C. at 27, 207 S.E.2d at 416 (citation omitted). The language from *Pierce* suggests that, in cases where the defendant asserts an alibi, as in this case, the State is not permitted to prove the crime occurred on a date other than the date in the indictment without advance warning. *Pierce*, however, does not require the State to prove beyond a reasonable doubt that the offense occurred on the date referenced in the indictment.

Although the alleged victims were unable to pinpoint consistently the dates of the alleged offenses, it appears this was caused by their young ages rather than an attempt by the State to prove the sexual assaults occurred at times other than those referenced in the juvenile petition. Moreover, while Robert attempted to establish an alibi for the dates in question through witnesses who testified he had no contact with the girls during the time set forth in the juvenile petition, the alleged victims' great-grandmother testified that while the girls were living with her, Robert did babysit them during the alleged time frame at her home and her daughter's home.

For the reasons discussed above, Robert's delinquency adjudication is affirmed in part and the case is remanded for a hearing consistent with this opinion.

**AFFIRMED IN PART AND REMANDED.**

HEARN, C.J., and STILWELL, J., concur.