20426

The STATE, Respondent, v. Richard HALL, Appellant.

(285 S. E. (2d) 112)

*William D. Richardson, Esq., of Richardson and Johnson,* Greenville, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., and Brian P. Gibbes, Assty. Gen.,* of Columbia, *and William W. Wilkins, Jr., Sol.,* of Greenville, *for Respondent,*

May 12, 1977.

LITTLEJOHN, Justice:

The appellant, Richard Hall, was convicted in Greenville County of murder (two counts), assault and battery with intent to kill, armed robbery and carrying a concealed weapon; the jury found him not guilty of murder while in the commission of robbery while armed with a deadly weapon (two counts). He was sentenced by the trial court to death by electrocution and, in the event the death sentence was commuted to life imprisonment,[1] he was also sentenced to serve a combined total of forty-five years and thirty days for the remainder of his crimes.

The pertinent facts of this case are that on June 18, 1975, the appellant entered the Friendship Lounge in Greenville at approximately 11:00 p. m. Around 12:00 he went out to his truck, picked up a gun and returned to the Lounge, announcing that a holdup was taking place. Shortly thereafter he shot three persons, two of whom were killed; Caroline

---

[1] At the time of sentencing the constitutionality of death penalty statutes similar to ours was in contest in the Unied States Supreme Court.

Shanks was severely wounded. After the shooting and the robbery, the appellant abducted Shanks and proceeded on Highway I-85 towards Atlanta. He later pulled over onto the side of the road and a highway patrolman stopped to see if he needed assistance. Upon discovering the condition of Shanks, the patrolman placed appellant under arrest.

A major part of the appellant's defense below was that of insanity; before trial, he underwent fairly extensive testing and evaluation. The results of those tests as well as the testimony of those involved in administering and interpreting the tests were admitted, to a certain extent, into evidence. The appellant has assigned several errors of law to that portion of the trial dealing with the question of insanity. It is those alleged errors to which we first turn our attention.

The appellant argues the trial court erred in refusing to allow Dr. Earl McFadden, a psychiatrist, to testify as to (1) certain background information concerning the earlier life of the appellant (related to the doctor by the appellant himself), and (2) conversations had with past employers of the appellant. The court found the testimony concerning the appellant's early life irrelevant, and testimony by the doctor as to his conversations with third persons inadmissible.

As this Court noted in *Gentry v. Watkins-Carolina Trucking Co.,* 249 S. C. 316, 154 S. E. (2d) 112 (1967), whether or not tsetimony of a physiician as to statements made to him by the patient *post litem motam* should be excluded is a matter dependent upon the circumstances of each case and to be left to the trial court's discretion. While *Gentry* is factually distinguishable from the present case, the rule is certainly still applicable. We cannot say that as a matter of law the trial court abused its discretion in deciding to exclude testimony concerning the appellant's apparently normal childhood. Unlike the testimony involved in *Gentry,* Dr. McFadden's testimony failed to prove relevant to the appellant's alleged mental affliction.

Further, we are of the opinion that the trial court committed no error in refusing to allow Dr. McFadden to testify as to his conversations with several former employers of the appellant. The doctor was permitted to give his full psychiatric evaluation based on the accumulation of data acquired from all sources and, accordingly, the jury had the benefit of his expert opinion.

Citing the fact that the appellant was found guilty of the separate offenses of murder and armed robbery, but not guilty of murder while in the commission of robbery while armed with a deadly weapon, it is next argued that these were inconsistent verdicts entitling the appellant to a new trial. Multiple verdicts are inconsistent if the essential elements of the count of which the defendant is acquitted are identical and necessary to prove the count of which the defendant is convicted. *State v. Amerson*, 244 S. C. 374, 137 S. E. (2d) 284 (1964).

Upon examination of the record before us, it is apparent that the appellant did in fact commit murder while in the commission of an armed robbery; the verdicts are obviously inconsistent. Nevertheless, under the facts, the inconsistency of the verdicts could not be construed as prejudicial to the appellant whatsover, and absent such prejudice we are not compelled to grant him a new trial.

Appellant charges error on the part of the trial judge in permitting a witness for the State, who was present during a portion of the trial, to testify in reply, even though witnesses had been ordered sequestered. A clinical psychologist, Theron V. Smith, was present during a part of the testimony. The solicitor conferred with him during the trial of the case. When Smith was called to testify in reply, counsel for the appellant objected on the ground that he had been present in the courtroom. The record is not completely clear, but it is inferable that the solicitor did not know that he was going to call this witness until after the insanity defense had been interposed. Under our procedures.

a defendant is not required to announce in advance the nature of his defense. After discussing the matter with counsel, the court permitted Smith to testify concerning tests that he had made on the appellant, and his testimony was limited to that matter.

Whether witnesses are sequestered or not is a matter for the discretion of the trial judge. In like fashion, whether a witness who had been present, under the circumstances here, should be permitted to testify is also a matter for the discretion of the trial judge. It is obvious that the judge exercised that discretion by limiting the testimony Smith was permitted to give. We find no prejudice warranting a reversal and the granting of a new trial.

In *State v. Rumsey,* 267 S. C. 236, 226 S. E. (2d) 894 (1976), we recognized the ruling of the Supreme Court of The United States in the cases of *Woodson v. North Carolina,* 428 U. S. 280, 96 S. Ct. 2978, 49 L. Ed. (2d) 944 (1976) ; and *Roberts v. Louisiana,* 428 U. S. 325, 96 S. Ct. 3001, 49 L. Ed. (2d) 974 (1976). Those cases held that statutes similar to ours were unconstitutional as relates to the death penalty. In line with the procedure permited in *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L. Ed. (2d) 346 (1976), and used by this Court in *State v. Gibson,* 259 S. C. 459, 192 S. E. (2d) 720 (1972) and in *Rumsey,* we affirm appellant's conviction of murder and reverse only the imposition of the death penalty, leaving appellant subject to the constitutional life sentence provision of §16-52, Code of Laws of South Carolina (1962) *as amended* (Supp. 1975). Other sentences imposed by the court remain intact.

After examination of the appellant's remaining exceptions, we find that no error of law appears and a full written opinion as to them would have no precedential value; they are dismissed pursuant to Rule 23 of our Rules of Practice.

Accordingly, the case is remanded to the General Sessions Court of Greenville County for the purpose of resentencing the appellant to life imprisonment.

Affirmed As To Conviction;

Reversed and Remanded As To Sentence.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.